IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

PAUL VANDIVER,

     Plaintiff,

v.

MERIWETHER COUNTY,
GEORGIA,

     Defendant.

CIVIL ACTION FILE

NO. 3:17-cv-114-TCB

## O R D E R

This case comes before the Court on Defendant Meriwether

County's motion [6] to dismiss.

## I.    Background

On May 23, 2015, Meriwether County issued citations to Plaintiff

Paul Vandiver for violations of zoning ordinances related to business

registration and noise regulation. It can be inferred from the complaint

that sometime thereafter the County referred the violations to the office of Peter Skandalakis, district attorney for the Coweta Judicial Circuit.[1]

On August 17, assistant district attorney Robert Peterkin obtained a twenty-four count indictment in Meriwether County Superior Court for the ordinance violations. Two days later, the County dismissed four of the County-issued citations against Vandiver.

Based on the remaining counts in the indictment, Peterkin moved on behalf of the State[2] to place Vandiver in custody and set a $10,000 bond. The superior court granted the motion and Vandiver was arrested. Vandiver posted bond, which was subsequently revoked on the

---

[1] This judicial circuit comprises Carroll, Coweta, Heard, Meriwether, and Troup counties.

[2] The Court is permitted to consider documents attached to the complaint as part of the complaint. *Owens v. Metro. Life Ins. Co.*, No. 2:14-cv-00074-RWS, 2015 WL 1651125, at *3 (N.D. Ga. Apr. 14, 2015) ("[D]ocuments attached to a complaint are considered part of the complaint." (citing FED. R. CIV. P. 10(c))). All of the Court documents attached to Vandiver's complaint show that the motions made by assistant district attorney Peterkin were made on behalf of the State of Georgia, rather than the County, as Vandiver avers throughout his complaint. Despite the Court's obligation to accept the facts in a complaint as true, it is not required to ignore specific, contradictory evidence appearing in an undisputed document properly before it. *Simmons v. Peavy-Welsh Lumber Co.*, 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibits control."). Accordingly, the Court finds that the motions and pleadings before the superior court were made on behalf of the State of Georgia.

State's motion. He was, once again, arrested. He was later released on a supersedeas bond order.

After this, on March 10, 2016, Beth Neely-Hadley, Chairman of the Meriwether County Board of Commissioners, sent a letter purporting to represent the entire commission. The letter was addressed to district attorney Skandalakis and states:

> This letter is in reference to the Vandiver case that is currently being heard in Superior Court, Coweta Judicial Circuit, Meriwether County, Georgia.
>
> The Meriwether County Board of Commissioners is aware that the District Attorney's office is representing Meriwether County in this matter, and have consented to this representation.
>
> Please accept this letter as the Board of Commissioner's formal request for your office to continue your representation of this case on behalf of Meriwether County.
>
> Should you have questions or need additional information, please contact our office. Thanks again for your assistance to our County.

[1-4] at 1.

The case proceeded until the Superior Court dismissed the indictment on April 21, 2016, because proceedings for violation of

county ordinances are required to be by citation or accusation—not indictment—under O.C.G.A. § 15-10-62(a).

On August 17, 2017, Vandiver filed this 42 U.S.C. § 1983 action against the County for false arrest (Count I) and malicious prosecution (Count II). The County has moved to dismiss based on Vandiver's failure to demonstrate that the deprivation of rights was the result of a County policy or custom.

## II.   Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" This pleading standard does not require "detailed factual allegations," but it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

Under Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Chandler v. Sec'y of Fla. Dep't of Transp.*, 695

4

F.3d 1194, 1199 (11th Cir. 2012) (quoting *id.*). The Supreme Court has explained this standard as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

*Iqbal*, 556 U.S. at 678 (citation omitted) (quoting *Twombly*, 550 U.S. at 556); *see also Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324–25 (11th Cir. 2012).

Thus, a claim will survive a motion to dismiss only if the factual allegations in the complaint are "enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555–56 (citations omitted). "[A] formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citation omitted). While all well-pleaded facts must be accepted as true and construed in the light most favorable to the plaintiff, *Powell v. Thomas*, 643 F.3d 1300, 1302 (11th Cir. 2011), the Court need not accept as true the plaintiff's legal conclusions, including those couched as factual allegations, *Iqbal*, 556 U.S. at 678.

Thus, evaluation of a motion to dismiss requires two steps: (1) eliminate any allegations in the pleading that are merely legal conclusions, and (2) where there are well-pleaded factual allegations, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III. Discussion

Vandiver seeks to hold the County liable under 42 U.S.C. § 1983 for malicious prosecution by the Coweta Circuit district attorney, as well as false arrest.[3] "[T]o impose § 1983 liability on a municipality, a plaintiff must show: (1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or

---

[3] In its motion to dismiss, the County argues that Vandiver's complaint fails to state claims against the County for actions taken by the Sheriff and the Meriwether County superior court judge, specifically related to the arrest order issued by the judge and executed by the sheriff's department. Vandiver has not addressed these arguments and the Court finds them persuasive. Vandiver has failed as a matter of law to demonstrate that the County should be held liable for the actions of either the sheriffs or the superior court judge performing his judicial function. *See Manders v. Lee*, 338 F.3d 1304, 1313 (11th Cir. 2003) ("[S]heriffs in Georgia derive their power and duties from the State, are controlled by the State, and counties cannot, and do not, delegate any law enforcement power or duties to sheriffs."); *Moore v. Cherokee Cty.*, No. 1:08-cv-3669-TCB, 2009 WL 2461724, at *2–5 (N.D. Ga. Aug. 10, 2009) (holding that Cherokee Superior Court judge was a state actor when performing judicial functions).

custom caused the violation." *Anderson v. Fulton Cty. Gov't*, 485 F.

App'x 394, 396 (11th Cir. 2012) (alteration in original) (quoting

*McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004)).

Vandiver asserts that his constitutional rights to be free from

false arrest and malicious prosecution were violated by the County or

those whose actions can be attributed to the County. The false arrest

claim will not survive. Vandiver was arrested pursuant to a court order,

meaning his arrest was effected through legal process as part of his

prosecution. As a result, his claim is properly one for malicious

prosecution, rather than false arrest. *Carter v. Gore*, 557 F. App'x 904,

906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one

as . . . allege[dly] issued here—constitutes legal process, and thus,

where an individual has been arrested pursuant to a warrant, his claim

is for malicious prosecution rather than false arrest."); *accord Coakley v.

Jaffe*, 72 F. Supp. 2d 362, 363–64 (S.D.N.Y. 1999); *see also Heck v.

Humphrey*, 512 U.S. 477, 484 (1994) ("The common-law cause of action

for malicious prosecution provides the closest analogy to claims of the

type considered here because, unlike the related cause of action for false

arrest or imprisonment, it permits damages for confinement imposed pursuant to legal process."); *Whiting v. Traylor*, 85 F.3d 581, 585 n.7 (11th Cir. 1996) ("Where an arrest is made after the filing of an information and the arrest is the basis of a Fourth Amendment section 1983 claim, we think the tort of malicious prosecution is the most analogous tort to the section 1983 claim.").

Vandiver's claim for malicious prosecution is based on the allegedly unlawful criminal prosecution initiated by the district attorney against him for county ordinance violations. *See Uboh v. Reno*, 141 F.3d 1000, 1002–03 (11th Cir. 1998) (recognizing malicious prosecution as a constitutional tort remediable through § 1983). The Court will assume *arguendo* that Vandiver adequately alleged a constitutional violation predicated on Fourth Amendment malicious prosecution.[4]

---

[4] Neither party gets very deep into the substantive aspects of Vandiver's malicious prosecution claim. It appears that Vandiver argues either that he did not in fact commit any of the alleged ordinance violations or that even if he did, the ordinances were not crimes because they were not indictable, *see* O.C.G.A. § 15-10-62(a), and therefore, violating them would not provide probable cause for a criminal prosecution. If the Court were to reach the substance of his alleged constitutional violation, it would hold that his malicious prosecution claim is supported only by conclusory allegations that he was prosecuted without probable cause, *see, e.g.*, [1]

Even so, his complaint fails to demonstrate the second and third elements of a claim for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because Vandiver has not adequately alleged a County custom or policy that caused his constitutional injury. "[M]unicipalities may not be held liable under 42 U.S.C. § 1983 on a theory of *respondeat superior*. Instead, municipalities may only be held liable for the execution of a governmental policy or custom." *Scala v. City of Winter Park*, 116 F.3d 1396, 1399 (11th Cir. 1997) (citing *Monell*, 436 U.S. at 694); *see also*

¶ 21. Conclusory allegations are insufficient to defeat a motion to dismiss. *Cf., e.g., Tucker v. Bradshaw*, No. 11-80058-CIV-RYSKAMP/VITUNAC, 2011 WL 13228172, at *8 (S.D. Fla. July 26, 2011) (dismissing malicious prosecution claim based on conclusory pleading); *Brivik v. Law*, 545 F. App'x 804, 806 (11th Cir. 2013) ("[T]his conclusory allegation is insufficient to demonstrate that [the officer] lacked arguable probable cause . . . ."). Vandiver did not in fact deny that he had committed any ordinance violations in the complaint. And there are no other averments of fact that support a claim that his criminal prosecution was without malice and/or probable cause, especially when the grand jury indictment attached to his complaint is prima facie evidence of probable cause. *See Lagroon v. Lawson*, 759 S.E.2d 878, 885 (Ga. Ct. App. 2014); *cf. also Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003) (looking to Georgia law for elements of § 1983 malicious prosecution claim). Finally, while Vandiver's theory that the prosecution lacked probable cause because he was indicted for a non-crime has a ring of merit, *see, e.g., Thompson v. Anderson*, 447 F. Supp. 584, 587–88 (D. Md. 1977), he has not sufficiently developed this claim and lacks citations to authoritative case law showing that his averments are adequate to that end. Ultimately, he bears the burden of demonstrating a lack of probable cause. *Cf., e.g., Pombert v. Glock, Inc.*, 171 F. Supp. 3d 1321, 1329–30 (N.D. Ga. 2016). Vandiver failed to discharge his pleading burden on at least the probable cause element; this would be fatal to his claim.

*Turquitt v. Jefferson Cty.*, 137 F.3d 1285, 1287 (11th Cir. 1998) (en banc) ("A local government may be held liable under § 1983 only for acts for which it is actually responsible, 'acts which the [local government] has officially sanctioned or ordered.'" (alteration in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986))).

Liability based on a county custom or policy may be established by showing that (1) the municipality's legislative body enacted an "official policy," (2) its "final policymakers have acquiesced in a longstanding practice that constitutes the entity's standard operating procedure," or (3) someone with final policymaking authority adopts or ratifies the unconstitutional act or decision of a subordinate. *Hoefling v. City of Miami*, 811 F.3d 1271, 1279 (11th Cir. 2016). "[W]here action is *directed by those who establish governmental policy*, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Scala*, 116 F3d at 1399 (second alteration in original) (quoting *Pembaur*, 475 U.S. at 481). Ultimately, the plaintiff bears the burden of demonstrating the existence of a municipal policy. *K.M. v. Sch. Bd. of Lee Cty.*, 150 F. App'x 953, 957 (11th Cir. 2005).

Vandiver's theories that the County should be liable for the district attorney's allegedly unconstitutional prosecution can be packaged into three arguments. First, that the March 10 letter was an official policy enactment of the County which resulted in a violation of his constitutional rights. Second, that the district attorney was acting as a final policymaker for the County when he wrongly indicted Vandiver. And third, that the County ratified the unconstitutional action of the district attorney with the March 10 letter. These arguments are taken in turn.

## A.    The March 10 Letter Is Not an Official Policy Enactment for Which the County Is Liable

The Court does not need to finally decide whether the March 10 letter is an "official policy" of the County to dispense with this argument; it accepts it *arguendo* because the letter was sent by the chairman of the board of commissioners purporting to represent the full board.[5]

---

[5] Defendants do not challenge Vandiver's contention that the March 10 letter was an official policy promulgated by the County.

Even with this concession, Vandiver's official-policy argument would fail for lack of causation. The third element of *Monell* liability requires that the "policy or custom cause the violation" alleged. *Yates v. Cobb Cty. Sch. Dist.*, 687 F. App'x 866, 873 (11th Cir. 2017) (citing *McDowell*, 392 F.3d at 1289). That is, the "policy or custom of the municipal entity [must be] the moving force behind the constitutional deprivation." *Id.* at 872 (citing *Monell*, 436 U.S. at 690–94).

Here, the March 10 letter shows that the County expected the district attorney to continue his prosecution of Vandiver's alleged ordinance violations. But this came months after the district attorney brought the indictment, after Vandiver was arrested, and after his bond was revoked. A policy enacted after an alleged unconstitutional event cannot be the legal cause of that event. *Cf. Cordova v. Aragon*, 569 F.3d 1183, 1194 (10th Cir. 2009) ("[B]asic principals [sic] of linear time prevent us from seeing how conduct that occurs *after* the alleged violation could have somehow caused that violation."). This argument accordingly fails.

## B. The District Attorney Did Not Act as a Final Policymaker for the County

Vandiver next asserts that the district attorney acted as a final policymaker on behalf of the County by proceeding by indictment for the non-criminal violation of county ordinances. For the reasons that follow, this argument too is rejected.

The district attorney is not a final policymaker for the County. "*Pembaur* and *Praprotnik* both make clear that whether a particular official has final policymaking authority for § 1983 purposes is a matter of state law." *Owens v. Fulton Cty.*, 877 F.2d 947, 950 (11th Cir. 1989) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988); and then citing *Pembaur*, 475 U.S. at 483); *see also K.M.*, 150 F. App'x at 957 ("State law determines which bodies or persons may establish municipal policy."). This is a question for the courts rather than the jury to decide and is thus resolvable at the motion-to-dismiss stage. *See Owens*, 877 F.2d at 950.

The Eleventh Circuit has articulated the analysis employed to ascertain whether the district attorney was working on behalf of Georgia or the County when he brought the criminal indictment:

> The courts traditionally have employed a functional analysis
> in deciding whether a particular individual is a policymaker
> for the county. The practical test articulated in *Familias
> Unidas* . . . is whether the decisionmaker, by virtue of his
> official conduct, serves as the "final authority or ultimate
> repository of county power."

*Id.* at 950 (quoting *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th

Cir. 1980)).

In *Owens*, the Eleventh Circuit answered the question of whether

a district attorney acts on behalf of Georgia or individual counties. It

concluded that, under Georgia law, the district attorney is not a county

official, "but rather a state official acting on behalf of the state when

exercising his discretion in prosecutorial decisions." *Id.* at 951.

*Owens* focused on the source of the district attorney's power to

determine on which entity's behalf he acted. The *Owens* court

contrasted decisions from the Fifth Circuit, which held in two separate

cases that district attorneys in Texas, *Crane v. Texas*, 766 F.2d 193 (5th

Cir. 1985), and Louisiana, *Mairena v. Foti*, 816 F.2d 1061 (5th Cir.

1987), were county officials. Comparing the laws of Texas and

Louisiana to Georgia, the Eleventh Circuit found that Georgia district

attorneys are primarily paid by state funds, elected in judicial circuits

generally composed of multiple counties, and root their law-enforcement authority in the repository of power ultimately vested in the Georgia attorney general. *Owens*, 877 F.2d at 950–52. The *Owens* court also noted that Georgia district attorneys' relationship to the county pertains to "merely budgetary and administrative matters." *Id.* at 952.[6]

So, at the outset, it is fairly well settled that Georgia district attorneys are state, not county, officials when exercising discretion in prosecutorial decisions. *Accord McClendon v. May*, 37 F. Supp. 2d 1371, 1376 (S.D. Ga. 1999). There is, however, a wrinkle in this case that was not present in *Owens*. The district attorney here was not enforcing state law. He was instead attempting to enforce county ordinances, allegedly at the behest of the County.

This distinction could arguably compel a different outcome than *Owens*, i.e., that he was acting on behalf of the County. That is except for the fact that when he sought to enforce the ordinance he did so by *state* indictment, rather than by citation or accusation in the name of

---

[6] Vandiver does not argue that the structure of Georgia's laws or law-enforcement practices have materially changed since *Owens* was decided in 1989. Nor is the Court aware of any such changes in Georgia law.

the County. The proceedings in the Meriwether Superior Court make clear that the indictment and subsequent proceedings were done in the name of the State of Georgia. *See, e.g.*, [1-3] at 1 (listing "STATE OF GEORGIA" as the prosecuting party in the case caption); *id.* ("COMES NOW, the STATE of GEORGIA, by and through the District Attorney for the Coweta Judicial Circuit . . . ."); *id.* at 2 ("[T]he State of Georgia files this motion so that the Court may revoke the Defendant's bond."). While the County may have referred the violations to the district attorney, when he drew up the indictment he put on his State of Georgia hat and proceeded in his capacity as an officer of the State.

The Court acknowledges that it appears to be somewhat unusual for a Georgia district attorney to enforce a county ordinance (especially by indictment). But it is not clear that such an act is totally foreclosed to the office of district attorney. It is possible that he had *some* authority to attempt to enforce a county ordinance by virtue of his state office, rather than simply as an instrumentality of the County. Under Georgia law, "a prosecution for the violation of a city ordinance is a quasi-criminal action . . . ." *City of Moultrie v. Csiki*, 29 S.E.2d 785, 785

(Ga. Ct. App. 1944). And a municipality only exercises its authority to enforce a violation of its own ordinances by powers delegated to it by the State. *See* O.C.G.A. § 15-10-62 (delegating enforcement power to counties); *Westbrook v. Zant*, 575 F. Supp. 186, 188 n.1 (M.D. Ga. 1983), *rev'd on other grounds*, 743 F.2d 764 (11th Cir. 1984) ("[A] county attorney is authorized to prosecute violations of county ordinances on behalf of the county [pursuant to State law.]" (citing O.C.G.A. § 15-10-62)).

As averred, it appears that the district attorney, *on behalf of the State*, purported to exercise the State's inceptive law-enforcement power to prosecute a violation of its political subdivision's ordinance. *See, e.g.*, [1-1] at 1 (showing "STATE OF GEORGIA" in the case caption and reflecting the indictment by the "Grand Jury aforesaid, in the name and behalf of the Citizens of the State of Georgia"). And though a proceeding by indictment was foreclosed here by O.C.G.A. § 15-10-62—even by the district attorney—this blunder was effected through exercise of state, rather than county, authority.

This conclusion is necessary in light of the Eleventh Circuit's instruction that resolving the issue of final policymaking authority requires a determination as to who is the ultimate repository of county power with respect to the allegedly unlawful action. Vandiver argues that the district attorney was appointed as the County's agent to enforce the county ordinances under O.C.G.A. § 15-10-62(a), and was therefore the ultimate repository of County authority with respect this act. But once again, the complaint shows that the district attorney drew up the indictment in the name of the State. And the power to draw up indictments is vested in the district attorney *by state law. See* O.C.G.A. § 15-18-6(4). Thus, the district attorney was not acting as the ultimate repository of County authority when he pursued Vandiver by indictment.

The Court finds further support for this holding in the Eleventh Circuit's decision in *Turquitt*, which overruled a previous opinion in *Parker v. Williams*, 862 F.2d 1471 (11th Cir. 1989). *Parker* held a county liable for injuries to an inmate caused by an Alabama chief jailer because the jail was operated in partnership with the county and the

sheriffs. Like Georgia, Alabama sheriffs are generally considered state actors. *See McMillian v. Johnson*, 88 F.3d 1573, 1578 (11th Cir. 1996). The Eleventh Circuit found that *Parker* was wrongly decided in part because the county government had no authority to control the actions of the sheriff that hired the abusive jailer. *Turquitt* reiterated that a "local government 'must have power in an area in order to be held liable for an official's acts in that area.'" *Id.* (quoting *McMillian*, 88 F.3d at 1578).

Upon review of Alabama law, the court concluded that the county defendant in *Parker* had no power over the administration of the jail; rather, its power extended only to "maintaining the jail's physical plant and providing operational funding." *Id.* at 1291. This not only affected the policy or custom issue, but it also defeated *Monell* causation because "a local government can only be liable under § 1983 for injuries which the government itself caused and causation necessarily implies control." *Id.* at 1292 (citation omitted).

Similarly, the County here has no inherent power over the district attorney when he draws up an indictment in the name of the State.

Rather, this function is performed pursuant to his state-derived power, and he is responsible to the State in his performance.

This case also entails an issue of causation. It cannot be fairly said that the County caused the alleged malicious prosecution. This is because it was the district attorney, acting in his capacity as a state prosecutor, who brought the criminal charges against Vandiver. The chain of causation between the County and the alleged injury broke when the district attorney exercised his power to proceed against Vandiver by way of a state indictment. Even though the County may have asked the district attorney to prosecute the violations, it had no power to make him do it by way of state indictment. Again, that power is vested in him from the State, and thus it is the State that has the authority to control the district attorney in this respect.

Aggravating the causation deficiency is that there is no suggestion that the County has the power to prevent or alter the district attorney's prosecutorial decision to bring the state indictment; that is, it has no say in the manner in which the district attorney exercises his authority to bring criminal prosecutions *on behalf of the State*. It therefore should

not be held liable for actions it does not control or direct. *Cf. Grech v. Clayton Cty.*, 335 F.3d 1326, 1348 (11th Cir. 2003) (en banc) ("The counties' lack of authority and control over sheriffs explains why counties have no § 1983 liability for their conduct. For example, if a rogue sheriff adopted an unconstitutional law enforcement policy or practice, the county has no authority to prevent or alter it and, in turn, incurs no § 1983 liability for it."); *cf. also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("Where, as here, controlling law places limits on the County's authority over the district attorney, the County cannot be said to be responsible for the conduct at issue.").

The causation chain is an important aspect of *Monell* cases and the policies underlying *Monell* liability. Courts must be mindful to ensure that municipal liability is predicated upon an act traceable to the County itself, one that represents a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur*, 475 U.S. at 483.

Actions the County is liable for should also be those it has the authority to remediate. This is especially true when *Monell* liability is allegedly predicated upon a single incident. As the Supreme Court has said:

> Where a claim of municipal liability rests on a single decision, not itself representing a violation of federal law and not directing such a violation, the danger that a municipality will be held liable without fault is high. Because the decision necessarily governs a single case, there can be no notice to the municipal decisionmaker, based on previous violations of federally protected rights, that his approach is inadequate. Nor will it be readily apparent that the municipality's action caused the injury in question, because the plaintiff can point to no other incident tending to make it more likely that the plaintiff's own injury flows from the municipality's action, rather than from some other intervening cause.

*Bd. of Cty. Comm'rs of Bryan Cty.*, 520 U.S. 397, 408–09 (1997).

In this case, Vandiver has not sufficiently alleged a deliberate choice made by the County such that it should be responsible for the district attorney's action, particularly when there is little evidence it has any authority to control the district attorney's actions at the time.

## C. The County Did Not Ratify the District Attorney's Allegedly Unconstitutional Act

Vandiver's last argument is that the County ratified the alleged unconstitutional actions of the district attorney. To hold the County liable for ratifying unconstitutional actions of a subordinate,[7] Vandiver must "demonstrate that local government policymakers had an opportunity to review the subordinate's decision and agreed with both the decision and the decision's basis before . . . hold[ing] the government liable on a ratification theory." *Salvato v. Miley*, 790 F.3d 1286, 1296 (11th Cir. 2015) (quoting *Thomas ex rel. Thomas v. Roberts*, 261 F.3d 1160, 1174 n.12 (11th Cir. 2001), *cert. granted, judgment vacated sub nom. Thomas v. Roberts*, 536 U.S. 953 (2002), *opinion reinstated*, 323 F.3d 950 (11th Cir. 2003)). "Only when 'the authorized policymakers approve a subordinate's decision and the basis for it' have they

---

[7] The Court is doubtful as to whether the district attorney can properly be described as a County "subordinate" under the circumstances of this case, especially given its conclusion in Part III.B., *supra*. The parties do not cite to any cases defining "subordinate" for purposes of a *Monell* ratification theory. In those cases where ratification has been found, the subordinate's position falls within the purview of the final policymaker's authority. *See, e.g.*, *Bannum, Inc. v. City of Ft. Lauderdale*, 901 F.2d 989, 998–99 (11th Cir. 1990) (recognizing that the decision of a city zoning board, as a sub-unit of city government, could be ratified by city). That cannot be said here, where the County has no authority to control the district attorney's prosecution of cases in the name of the State.

'ratifi[ed]' that 'decision.'" *Id.* (alteration in original) (quoting

*Praprotnik*, 485 U.S. at 127).

Here, the ratification theory is inappropriate. It is important to recall *Pembaur*'s admonition that *Monell* "is a case about responsibility." 475 U.S. at 478. As has already been said, this basic principle means that municipalities cannot be liable on a theory of respondeat superior, nor can they be held liable for actions taken by officials over whom they have no actual authority. *See id.* In the context of a ratification theory under *Monell*, this means that a county is only liable "on the basis of ratification . . . when a subordinate public official makes an unconstitutional decision and when that decision is then adopted by *someone who does have final policymaking authority*." *Matthews v. Columbia Cty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (emphasis added).

While the Court accepts Vandiver's averment that the board of commissioners is the final policymaking authority for the County, there is a lingering question as to whether its alleged ratification was sufficiently authoritative. The answer is no. The idea is that not only

must there be approval of the alleged subordinate's unconstitutional conduct, but the approval must also be within the sphere of the final policymaker's authority. Here, as discussed above, the County's approval, to the extent it is manifest in the March 10 letter, has no authoritative relationship to the criminal proceedings by the district attorney. Its approval of the district attorney's actions, which were instigated on behalf of the state, did nothing *authoritative* to affect the proceedings because the County has no authority over the district attorney in this instance.[8]

Thus, the Court holds that Vandiver's ratification theory fails.

---

[8] Put differently, this could also be framed as an issue of causation. For example, as the Tenth Circuit held, "[t]he final policymaker must not only approve the decision, but also adopt the basis for the decision, and the ratification must be the moving force, or cause, of the alleged constitutional violation." *Dempsey v. City of Baldwin*, 143 F. App'x 976, 986 (10th Cir. 2005) (citing *Praprotnik*, 485 U.S. at 127); *see also Coffee v. City of Oklahoma City*, No. CIV-08-239-W, 2009 WL 10669175, at *5–6 (W.D. Okla. Aug. 4, 2009). *But see Au Hoon v. City & Cty. of Honolulu*, No. 89-16305, 1991 WL 1677, at *4 (9th Cir. Jan. 10, 1991) ("Other cases also suggest that ratification of subordinate decisions may occur after the allegedly unconstitutional action has already occurred. Thus, it is not correct to say that only actions approved in advance are 'ratified' for purposes of imposing liability on a municipality under section 1983." (citations omitted)). Here, there is a question as to whether the March 10 letter, accepting that it in fact ratified the district attorney's action, had any actual causative effect upon the alleged unconstitutional action.

## IV. Conclusion

Vandiver has failed to demonstrate that the alleged constitutional deprivation he experienced was the result of a policy or custom on behalf of the County in order to hold the County liable under *Monell*. Therefore, the County's motion [6] to dismiss is granted. The Clerk is directed to close the case.

IT IS SO ORDERED this 7th day of August, 2018.

Timothy C. Batten, Sr.
United States District Judge